**Jon P. Stride**, OSB No. 903887
  Direct Dial:  503.802.2034
  Fax:  503.972.3734
  E-Mail:  jon.stride@tonkon.com
**David M. Weiler**, OSB No. 085639
  Direct Dial:  503.802.5766
  Fax:  503.972.7466
  E-Mail:  david.weiler@tonkon.com
**TONKON TORP LLP**
1600 Pioneer Tower
888 S.W. Fifth Avenue
Portland, OR  97204

       Attorneys for Plaintiffs AXTS Inc and
       Rainier Arms, LLC


## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

### (Eugene Division)

| | |
|---|---|
| **AXTS INC**, an Oregon corporation; and **RAINIER ARMS, LLC**, a Washington limited liability company, | Civil No.  6:13-cv-2100 |
| Plaintiffs, | **COMPLAINT (Trademark Counterfeiting, Infringement, Unfair Competition, and False Designation of Origin under the Lanham Act; Oregon Unfair Trade Practices Act; Common Law  Trademark Infringement and Unfair Competition)** |
| v. | |
| **ARMS UNLIMITED INC.**, a California corporation; **DANIEL SHAMIE**, an individual; and **JOSH SALAMA**, an individual, | |
| Defendants. | *DEMAND FOR JURY TRIAL* |

       For their complaint against defendants Arms Unlimited Inc., Daniel Shamie, and

Josh Salama ("Defendants"), Plaintiffs AXTS Inc and Rainier Arms, LLC ("Plaintiffs") allege

the following:

## NATURE OF THE ACTION

1.      This is an action for various trademark violations under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, and under the Anti-Counterfeiting Consumer Protection Act, 15 U.S.C. § 1116(d), as well as state law claims.  Defendants have knowingly sold, offered for sale, or otherwise contributed to the sale of counterfeit versions of Plaintiffs' RAPTOR charging handle, an aftermarket firearm accessory.  Defendants' conduct has resulted in customer confusion, lost sales of Plaintiffs' genuine products, and extensive damage to Plaintiffs' goodwill.  Unless they are enjoined by this Court, Defendants' conduct will continue to cause irreparable harm to Plaintiffs.

## PARTIES

2.      AXTS Inc ("AXTS") is an Oregon corporation with its principal place of business in Salem, Oregon.  AXTS designs, manufactures, and sells a variety of high-quality, aftermarket firearm accessories, including the RAPTOR charging handle at issue in this action.

3.      Rainier Arms, LLC ("Rainier") is a Washington limited liability company.  Rainier sells a variety of firearms and firearm accessories, including the RAPTOR charging handle, which it co-brands with AXTS and sells throughout the United States.

4.      Defendant Arms Unlimited, Inc. ("AU") is a California corporation with its principal place of business in Canoga Park, California.  AU has sold counterfeit RAPTOR charging handles on eBay, under the user IDs allsourcesupply and alltypesupply; on Amazon, under the user ID ArmsUnlimited; and on its own website, www.armsunlimited.com.  On information and belief, AU has also sold counterfeit RAPTOR charging handles on eBay and Amazon using other user IDs.

5.      On information and belief, Defendant Daniel Shamie ("Shamie") is an individual residing in California.  Shamie is the owner and operator of AU.  On information and belief, Shamie has overseen and contracts for the manufacture and oversees the sale of counterfeit RAPTOR charging handles through the above-mentioned online sites.

6.      On information and belief, Defendant Josh Salama ("Salama") is an individual residing in California.  On information and belief, Salama is a part-owner and operator of AU.  On information and belief, Salama has overseen and contracts for the manufacture and oversees the sale of counterfeit RAPTOR charging handles through the above-mentioned online sites.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a) and (b), because the asserted claims arise under the trademark laws of the United States.

8.      This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

9.      This Court has personal jurisdiction over Defendants because they regularly do or solicit business within Oregon; because they misrepresented the origin of their counterfeit products to Oregon residents; and because they caused tortious injury to Plaintiffs' trademarks within Oregon.

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this action occurred in Oregon and a substantial part of the property that is the subject of the action is situated here.

## FACTS

**A.      <u>Plaintiffs' Trademark Usage</u>**

11.     AXTS is the sole and exclusive owner of the AXTS mark, shown in paragraph 14, and has continuously used this mark since October 2009.  AXTS has acquired common law rights in the AXTS mark throughout the United States.  Through AXTS's design, manufacture, and sale of cutting-edge, aftermarket firearm accessories, the AXTS mark has become well-known within the firearms industry.  The goodwill associated with the AXTS mark is a valuable asset.

12.      Rainier is the sole and exclusive owner of the federally registered RAINIER ARMS mark, Reg. No. 4,320,124, shown in paragraph 14, and has continuously used this mark since 2005.  Through Rainier's exceptional customer service, extensive online advertising, high-quality products, and competitive pricing, the RAINIER ARMS mark has become well-known within the firearms industry.  The goodwill associated with the RAINIER ARMS mark is a valuable asset.

13.      Plaintiffs are the exclusive owners of the RAPTOR mark, shown in paragraph 14, as used in connection with their charging handle product.  The RAPTOR mark has been used continuously since August 2012 when Plaintiffs first placed the RAPTOR charging handle on the market.

14.      The graphic below shows RAINIER ARMS, RAPTOR, and AXTS marks on Plaintiff's charging handle product.



15.      Plaintiffs have invested significant time and money to develop, advertise, and promote their marks within the firearms industry.  As a result of such efforts, Plaintiffs have established significant goodwill and widespread recognition of the AXTS, RAINIER ARMS,

and RAPTOR marks throughout the United States.  Customers and potential customers have come to associate the combination of the AXTS, RAINIER ARMS, and RAPTOR marks exclusively with Plaintiffs and their charging handle product.

16.    Because of the care and skill exercised by AXTS in designing and manufacturing the RAPTOR charging handle, customers in the firearms industry have come to associate the combination of Plaintiffs' marks with high-quality.

**B.    <u>Defendants' Sale of Counterfeit Charging Handles</u>**

17.    Upon being placed on the market, the RAPTOR charging handle was an instant success, and it has continued to sell extremely well.

18.    In March 2013, AU placed, and Plaintiffs filled, two separate orders for Plaintiffs' RAPTOR charging handle: the first order was for 240 units, the second for 170.

19.    Shortly after selling RAPTOR charging handles to AU, Plaintiffs were notified by another dealer that Plaintiffs' RAPTOR product was being sold by an online retailer, Botach Tactical ("Botach"), at a price below the minimum advertised price ("MAP") established by Plaintiffs for the product.  The dealer further informed Plaintiffs that Botach had likely received its inventory of the RAPTOR product from AU.

20.    Botach failed to respond to a call and to an email AXTS sent in April regarding the pricing issue.  AXTS then reached out to AU and asked if AU had supplied Botach with its inventory.  Although AU adamantly denied that it had supplied RAPTOR products to Botach, AXTS was unconvinced and subsequently revoked AU's dealer privileges, preventing AU from making further purchases of the RAPTOR product from AXTS's website.

21.    Not long after AXTS revoked AU's dealer privileges, Defendant Salama contacted AXTS and insisted that AU's dealer privileges be restored.  When AXTS refused, Salama became angry and abrasive.  Over the next few days, AU attempted to contact AXTS by phone so many times that AXTS eventually blocked its number.

22.    After blocking AU's number, Plaintiffs heard nothing further from

Defendants.  But Plaintiffs continued to monitor AU's website and its listings on eBay and Amazon.  During the summer months, Plaintiffs observed that AU's inventory of the RAPTOR charging handle for the AR-15[1] rifle dropped to zero.

23.    Although Plaintiffs made no further sales to AU after March 2013, on August 28, Plaintiffs discovered that AU's website was once again listing inventory of the AR-15 RAPTOR product.

24.    Confused by AU's sudden acquisition of inventory and suspicious of its below-MAP pricing, AXTS purchased a RAPTOR product from AU's website on September 17. The product AXTS received from AU a few days later was nearly identical in appearance to Plaintiffs' RAPTOR charging handle (and bore Plaintiffs' marks), but was of drastically inferior quality.  Plaintiffs concluded that the product AXTS received from UA was a counterfeit.

25.    The day after receiving the counterfeit product from AU, AXTS was informed by another online dealer that an eBay user known as alltypesupply was selling RAPTOR products at below-MAP pricing.  The dealer also informed AXTS that he believed alltypesupply was associated with AU.

26.    On September 23, 2013, Rainier posted detailed instructions on its Facebook page regarding how to tell the difference between a genuine RAPTOR product and a counterfeit.  On the same day, in a separate post on its Facebook page, Rainier added a notice that AU was not an authorized dealer of RAPTOR products.

27.    On or about September 27, 2013, AXTS sent AU a letter regarding the counterfeiting and demanded a response by mid-October.  AU failed to respond to AXTS's correspondence, but thereafter removed its RAPTOR listings from its eBay and Amazon accounts and listed the AR-15 RAPTOR product as "out of stock" on its own website.

---

[1] Plaintiffs sell two types of Raptor charging handles:  one that fits the AR-15 rifle and another that fits the less common AR-10 rifle.  Because far more AR-15 rifles are sold in the United States than AR-10s, far more Raptor products are sold for the AR-15 than for the AR-10.

28.    But several weeks later, a dealer informed AXTS that AU was again selling RAPTOR products on Amazon under AU's own name.  Plaintiffs later discovered that AU had also resumed selling the product on its own website.  AXTS investigated by ordering another RAPTOR product from AU's website.  The ordered item arrived on October 30 and it too was a counterfeit, but differed in subtle but significant ways from the first counterfeit charging handle Plaintiffs purchased from AU.  Notably, this Version Two counterfeit included updated features meant to get rid of the differences—pointed out on Rainier's Facebook page—between the counterfeit and the genuine RAPTOR product.

29.    Despite Defendants' attempt to further disguise their counterfeit product, significant differences remain between it and the genuine RAPTOR charging handle.  Most notably, Defendants' Version Two counterfeit does not match the mechanical motion of the latest version of the real RAPTOR,[2] presumably because Defendants were unaware that Plaintiffs had made this otherwise insignificant design change.

30.    Because of complaints of counterfeit RAPTOR sales by its users, Amazon has now blocked certain users from selling the RAPTOR product on Amazon.  But Amazon's block is both over- and under-inclusive:  it has prevented an authorized retailer from selling genuine RAPTOR products and failed to stop new users associated with AU from selling counterfeits.

C.    **Confusion and Injury Caused by Defendants' Counterfeiting**

31.    Defendants' conduct has caused, and unless enjoined, will continue to cause, irreparable harm to Plaintiffs' valuable goodwill.

32.    Because Defendants' counterfeit RAPTOR charging handles (including the markings thereon) look nearly identical to the genuine product, but are of far inferior quality,

---

[2] For reasons unrelated to this lawsuit, Plaintiffs altered the design of the RAPTOR charging handle in or around May 2013 such that engaging the left side of the charging handle no longer causes the right side to perform a mirror movement.

their presence on the market has caused, and will continue to cause, confusion among customers. Plaintiffs have undertaken efforts to inform the public of the presence of Defendants' counterfeits and to instruct the public how to identify such counterfeits. But Plaintiffs have discovered online criticism falsely associating the inferior counterfeit products with Plaintiffs. Plaintiffs have also received numerous calls and emails from customers who have expressed confusion regarding the source of the RAPTOR charging handle products they have purchased.

33.    Defendants' sale of counterfeit products has also caused Plaintiffs to lose profits from the sale of their own, genuine product. On information and belief, Defendants' sale of inferior counterfeits at below-MAP pricing has diverted approximately ten percent of Plaintiffs' overall sales of the RAPTOR charging handle.

### FIRST CLAIM FOR RELIEF

### COUNT I

### Trademark Counterfeiting and Infringement under 15 U.S.C. § 1114(1)(a), 1116, and 1117

34.    Plaintiffs reallege the preceding paragraphs.

35.    Defendants' conduct alleged above constitutes the use in commerce, without Plaintiffs' consent, of a reproduction, counterfeit, copy, or colorable imitation of Plaintiffs' marks in connection with the sale, offering for sale, distribution, and advertising of goods. These actions have and, unless enjoined, will continue to deceive customers and to cause confusion and mistake. Accordingly, Defendants have infringed Plaintiffs' rights in Plaintiffs' marks in violation of the Lanham Act.

36.    Defendants' use of the counterfeit marks was and is willful, intentional, and done with knowledge that the marks used were and are counterfeit, as defined in Section 34(d)(1)(B) of the Lanham Act, 15 U.S.C. § 1116(d)(1)(B).

37.    Specifically, Defendants have knowingly caused to be manufactured, offered for sale, and sold, counterfeit RAPTOR products bearing Plaintiffs' marks.

38.    Defendants' conduct has caused, continues to cause, and was intended to

cause, confusion, mistake, and deception among customers in the firearms industry as to the origin and quality of Defendants' charging handle products.  This conduct constitutes trademark counterfeiting under 15 U.S.C. § 1114(1)(b).

39.     As a direct and proximate consequence of Defendants' actions, Plaintiffs have suffered substantial damages.  Plaintiffs are entitled to a preliminary and permanent injunction and to recover the following under 15 U.S.C. § 1117(a) and § 1117(b): (1) Defendants' profits from counterfeit sales; (2) all damages sustained by Plaintiffs; (3) treble those profits and/or damages; (4) the costs and attorney fees incurred in this action; and (5) prejudgment interest.

40.     As a direct and proximate consequence of Defendants' acts of willful trademark counterfeiting, Plaintiffs are entitled to elect statutory damages, under 15 U.S.C. § 1117(c)(2), of $2,000,000 per counterfeit mark per type of good sold, offered for sale, or distributed by Defendants.

41.     Defendants' conduct has caused, and will continue to cause, Plaintiffs irreparable harm.

## COUNT II

### Federal Unfair Competition and False Designation of Origin under 15 U.S.C. § 1125(a)

42.     Plaintiffs reallege paragraphs 1-33 above.

43.     Defendants' actions constitute the use in interstate commerce of a word, term, name, symbol, or device, or any combination thereof, or false designation of origin, regarding the sale, or offering for sale, of goods in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

44.     Defendants' counterfeiting activities have confused and deceived the public regarding the association of Defendants with Plaintiffs and regarding the make, sponsorship, or approval of the counterfeit products by Plaintiffs.  Unless enjoined, Defendants' conduct will continue to cause such confusion and deception.

45.    Defendants' use of the counterfeit marks was and is willful, intentional, and done with knowledge that the marks used were and are counterfeit, as defined in Section 34(d)(1)(B) of the Lanham Act, 15 U.S.C. § 1116(d)(1)(B).

46.    Specifically, Defendants have knowingly caused to be manufactured, offered for sale, and sold, counterfeit RAPTOR products bearing Plaintiffs' marks.

47.    Defendants' conduct has caused, continues to cause, and was intended to cause, confusion, mistake, and deception among customers in the firearms industry as to the origin and quality of Defendants' charging handle products.

48.    As a direct and proximate consequence of Defendants' actions, Plaintiffs have suffered substantial damages.  Plaintiffs are entitled to a preliminary and permanent injunction and to recover the following under 15 U.S.C. § 1117(a) and § 1117(b): (1) Defendants' profits from counterfeit sales; (2) all damages sustained by Plaintiffs; (3) treble those profits and/or damages; (4) the costs and attorney fees incurred in this action; and (5) prejudgment interest.

49.    As a direct and proximate consequence of Defendants' acts of willful trademark violations under 15 U.S.C. § 1125(a), Plaintiffs are entitled to elect statutory damages, under 15 U.S.C. § 1117(c)(2), of $2,000,000 per counterfeit mark per type of good sold, offered for sale, or distributed by Defendants.

50.    Defendants' conduct has caused, and will continue to cause, Plaintiffs irreparable harm.

## SECOND CLAIM FOR RELIEF

### Unfair Trade Practices under ORS 647.095, *et seq*.

51.    Plaintiffs reallege paragraphs 1-33 above.

52.    By their acts described above, Defendants have engaged in, and continue to engage in, acts of unfair competition in violation of Oregon law, ORS 647.095.

53.    Plaintiffs have been damaged as a direct and proximate consequence of

Defendants' actions.

54.    Defendants' conduct has caused, and will continue to cause, Plaintiffs irreparable harm.

55.    Because Defendants' conduct was undertaken in bad faith, Plaintiffs are entitled to treble damages and attorney fees under ORS 647.105.

### THIRD CLAIM FOR RELIEF

### State Common Law Trademark Infringement

56.    Plaintiffs reallege paragraphs 1-33 above.

57.    Defendants have violated Plaintiffs' senior common law trademark rights in Plaintiffs' distinctive marks with the intent to deceive the public into believing that Defendants' counterfeit products were made, approved, or sponsored by, or affiliated with, Plaintiffs.

58.    Plaintiffs have been damaged as a direct and proximate consequence of Defendants' actions.

59.    Defendants' conduct has caused, and will continue to cause, Plaintiffs irreparable harm.

60.    Defendants acted with malice in violating Plaintiffs' common law trademark rights, and Plaintiffs seek punitive damages accordingly.

### FOURTH CLAIM FOR RELIEF

### Common Law Unfair Competition

61.    Plaintiffs reallege paragraphs 1-33 above.

62.    Defendants' conduct constitutes common law unfair competition.

63.    Plaintiffs have been damaged as a direct and proximate consequence of Defendants' actions.

64.    Defendants' conduct has caused, and will continue to cause, Plaintiffs irreparable harm.

65.     Defendants acted with malice in violating Plaintiffs' common law trademark rights, and Plaintiffs seek punitive damages accordingly.

WHEREFORE, Plaintiffs pray for the following relief:

a.   On each Claim for Relief: (1) a preliminary and permanent injunction, pursuant to 15 U.S.C. § 1116(a), ORS 647.105, and the Court's inherent equitable powers, preventing Defendants, including all partners, officers, agents, servants, employees, attorneys, and all other persons or entities in active concert or participation with them, from: (i) manufacturing or selling any counterfeit RAPTOR charging handles and (ii) using Plaintiffs' marks or any confusingly similar mark, whether alone or in connection with other words or symbols; (2) an order requiring the recall, impounding, and destruction of all goods, advertising, or other items bearing infringing marks, pursuant to 15 U.S.C. § 1118, ORS 647.105, and the Court's inherent equitable powers; and (3) a judgment that Defendants' violations of state and federal law, as alleged herein, were knowing and willful;

b.   On its First Claim for Relief, in addition to the requested relief common to all claims: (1) a judgment against Defendants, in the amount of Plaintiffs' actual damages and the profits realized by Defendants through the sale of counterfeit RAPTOR products, and the costs of this action, pursuant to 15 U.S.C. § 1117(a); and (2) a judgment awarding Plaintiffs treble damages and attorney fees, as required by 15 U.S.C. § 1117(b), and/or statutory damages in an amount not to exceed two million dollars ($2,000,000) per mark for each of Plaintiffs' marks which Defendants have counterfeited, as authorized by 15 U.S.C. § 1117(c)(2), plus prejudgment interest, pursuant to 15 U.S.C. § 1117(b);

c.       On their Second Claim for Relief, in addition to the requested relief common to all claims: (1) a judgment against Defendants, in the amount of Plaintiffs' actual damages and the profits realized by Defendants through the sale of counterfeit RAPTOR products, pursuant to ORS 647.105; and (2) a judgment awarding Plaintiffs treble damages and attorney fees, pursuant to ORS 647.105, plus prejudgment interest thereon;

d.       On their Third and Fourth Claims for Relief, in addition to the requested relief common to all claims: (1) a judgment against Defendants, in the amount of Plaintiffs' actual damages and the profits realized by Defendants through the sale of counterfeit RAPTOR products, plus prejudgment interest thereon; and (2) a judgment that Defendants' infringement of Plaintiffs' common law trademark rights was done with malice and awarding punitive damages;

e.       Such further and other relief as this Court deems just and equitable.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38 and Local Rule 38.1(b), Plaintiffs respectfully demand a jury trial.

DATED:  November 26, 2013.

TONKON TORP LLP

By:_____/s/ Jon P. Stride_____
     Jon P. Stride, OSB No. 903887
        Direct Dial:  503.802.2034
        Fax:  503.972.3734
        E-Mail:  jon.stride@tonkon.com
     David M. Weiler, OSB No. 085639
        Direct Dial:  503.802.5766
        Fax:  503.972.7466
        E-Mail:  david.weiler@tonkon.com
     Attorneys for Plaintiffs

080000/00160/5097086v1

PAGE 13 - COMPLAINT